## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

MICHAEL EUGENE TANN,

*Plaintiff,*

v.

DAVID LUDWIKOSKI, et al.,

*Defendants.*

Civil Action No.: ELH-10- 00612

### MEMORANDUM OPINION

Michael Eugene Tann, the self-represented plaintiff, filed suit against defendants David Ludwikoski and George Mateja, pursuant to 42 U.S.C. § 1983, alleging racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* Complaint (ECF 1).[1] Tann, an African American, contends that, during the spring semester of 2007, Ludwikoski, an Assistant Professor at the Community College of Baltimore County ("CCBC"), who is Caucasian, discriminated against plaintiff, when he was a student in Ludwikoski's astronomy courses. Plaintiff sued Mateja, also an Assistant Professor at CCBC, because, in his role as the Science Department Coordinator, Mateja "backed Mr. Ludwikoski in every complaint [plaintiff] had about allowing concessions to the white students but denying them to [plaintiff]."

---

[1] Because plaintiff is proceeding *pro se*, his filings have been "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted). Moreover, plaintiff has been afforded every courtesy because he is a *pro se* litigant. For example, although plaintiff failed to appear at his deposition, I denied defendants' motion for sanctions (ECF 46). The court also granted Tann's request for an extension to complete discovery (ECF 46), notwithstanding that the discovery deadline had previously been extended (ECF 42). In addition, I approved plaintiff's request to enlist the United States Marshal Service to serve subpoenas on his witnesses (ECF 48), and I accepted his cross motion for summary judgment and opposition to defendants' motion for summary judgment, although the submissions were filed three weeks late (ECF 63). *See also* note 4, *infra.*

Complaint at 2.  Plaintiff seeks damages in the amount of $500,000.00.  *Id.* at 3.[2]

Defendants have moved for summary judgment ("Motion," ECF 54), and submitted a supporting memorandum ("Motion Memo," ECF 54-1) and several exhibits.[3]  Plaintiff opposes the Motion and has filed his own motion for summary judgment.  *See* "Plaintiff's Amended Cross Motion For Summary Judgment And Opposition To Defendants Summary Judgment Motion" ("Opposition," ECF 64).[4]  Defendants subsequently replied.  *See* "Consolidated Memorandum Reply And Opposition To Plaintiff's Cross Motion For Summary Judgment" ("Reply," ECF 68).  And, plaintiff filed "Plaintiff's Consolidated Memorandum Reply And Opposition To Defendant's Reply To Plaintiff' [sic] Cross Motion For Summary Judgment" ("Surreply," ECF 69).  The Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

## Factual Background

In the spring semester of 2007, plaintiff enrolled in Ludwikoski's astronomy lecture course and the corresponding astronomy lab course.  Affidavit of David Ludwikoski,

---

[2] This case is one of two civil rights suits brought by Tann in this Court.  In the other case, *Tann v. Fisher,* No. 11-00121, plaintiff asserted that he was "unconstitutionally detained, assaulted, and kidnapped" by a Towson University police officer (ECF 1).  The case was dismissed for insufficient service of process (ECF 16), and the Fourth Circuit affirmed (ECF 25).

[3] This is actually defendants' second motion for summary judgment.  After the case was instituted on March 9, 2010, it was summarily dismissed by Judge Legg, on the ground that defendants were not state actors under § 1983 (ECF 3, 4).  Plaintiff appealed (ECF 5) and, on August 18, 2010, the Fourth Circuit vacated the ruling and remanded for further proceedings (ECF 8).  Upon remand, defendants filed a "Motion To Dismiss Or, In The Alternative, For Summary Judgment."  ECF 18.  After briefing, Judge Legg denied the Motion (ECF 26).  Although Judge Legg characterized Tann's claim as "a thin one," *id.*, he explained that he was "reluctant to enter judgment against Tann without the benefit of a complete record."  *Id.*  Discovery commenced, and the case was reassigned to me on January 18, 2011.

[4] Plaintiff appended four exhibits to the original version of his Opposition, ECF 58, but the exhibits were omitted from the amended Opposition (ECF 63).  On the assumption that the exhibits were inadvertently omitted, I have considered them as if they were properly submitted.  *See* note 1, *supra*.

Defendants' Exhibit 1 ¶ 3.   Plaintiff earned an "A" in both classes.   *Id.*   Nevertheless, he

contends that he "was discriminated against . . . on the basis of race."   Complaint at 2-3.   Plaintiff

does not rely on overt acts of racial discrimination.   Instead, he cites several incidents of alleged

disparate treatment, based on race.   At plaintiff's deposition, excerpts of which are attached as

defendants' Exhibit 3, the following colloquy ensued:

> Q: [Y]our claim is that you believe these things[5]  happened to you because of
>     your race.  Is that right?
>
> A: I believe it was because of my race and I believe [Ludwikoski] discriminated
>     in making the decision[s].  So I think the same decisions were done, were
>     made differently for the same types of issues for the other students.
>
> Q: Now, Professor Ludwikoski never used any racially derogatory language
>     towards you or any other student. Right?
>
> A: No, not that I remember. No.
>
> Q: He never said that any action he was taking or decision he was making was
>     because of anyone's race.  Right?
>
> A: No, he didn't say it.
>
> Q: And there was nothing in any of his lectures or the class materials themselves
>     that you considered racist or anything like that. Right?
>
> A: No.

*Id.* at 18:2-21.

The incidents of alleged disparate treatment described by plaintiff fall into four

categories, as set forth below.

### *The Tardy Lab Assignment*

Plaintiff complains that Ludwikoski "denied [his] request, by e-mail, to have a lab

assignment considered for full credit," although plaintiff had "forgotten to turn it in" on March 7,

---

5 "These things" refers to the instances of disparate treatment, discussed, *infra*.

2007, when it was due.  Complaint at 1.  In an e-mail to Ludwikoski, dated March 10, 2007 (defendants' Exhibit 5), plaintiff explained that he "was distracted . . . and left without turning [it] in . . . ."  Ludwikoski responded by e-mail on March 12, 2007 (defendants' Exhibit 5),[6] and stated, in relevant part: "I understand what you are saying, but I'm sorry, I cannot accept it.  At this point, it is considered late, and it would not be fair to the other students to accept it."  The syllabus for "Astronomy Laboratory," provided to the students at the inception of the semester (defendants' Exhibit 4), stated: "**LATE ASSIGNMENTS WILL NOT BE ACCEPTED!**" (emphasis in original).

Plaintiff concedes in his Complaint that Ludwikoski "has a very strict policy for submitting homework, coming to class late, abscences [sic], etc" and that "[t]he class had to sign a contract concerning all of his policies."  Complaint at 1.  He also acknowledged at his deposition that "two other people in [his] group," a Caucasian male and an African American female, forgot to turn in the lab assignment, defendants' Exhibit 3 at 42:18-45:20, and both received "zeroes."  *Id.* at 59:19-60:5.

Nevertheless, plaintiff was unhappy with Ludwikoski's decision, and wrote a second e-mail to him on March 15, 2007 (defendants' Exhibit 6), asking for an exception to the policy against untimely submission of assignments.  In support of his request, Tann pointed to Ludwikoski's apparent relaxation of the policy for another student, stating:

> I remember where a student, I believe his name is Lance,[7] was allowed to come over 20 minutes late to take an exam.  It is highlighted in the syllabus that the door will be locked after the first week of class at the class starting time. . . . Apparently, that student was accommodated because the door was left open, which goes against the tardiness rule.

---

[6] In some instances, e-mail "chains" have been submitted as a consolidated exhibit, inclusive of the original e-mail and subsequent replies.

[7] This student is later identified as "Lance Hyle," who is Caucasian.

Without addressing Tann's allegations regarding the other student, Ludwikoski relented. In an e-mail dated March 16, 2007 (defendants' Exhibit 6), Ludwikoski said: "[D]ue to the fact that I have noticed an honest, hard-working effort in class up to this point, I have decided to accept the lab, this one time only, for half credit since it is late."

Still unsatisfied, plaintiff persisted in his quest for full credit; he sent another e-mail to Ludwikoski, also on March 16, 2007 (defendants' Exhibit 7), stating:

> I would like to have the paper graded and receive the proper credit.  If you have decided that it is fair to accept the project, I would greatly appreciate it if I could get the proper cedit [sic] for it.

Ludwikoski responded by e-mail that day, refusing to give Tann full credit.  But, he referred plaintiff to Mateja, in the event that plaintiff "wish[ed] to pursue th[e] matter further." *Id.*  In an e-mail dated March 30, 2007 (defendants' Exhibit 8), Mateja informed Ludwikoski that plaintiff had approached Mateja about the issue, and that Mateja told Tann he would "not be given full credit," as the "due date was clearly stated in [the] syllabus and the acceptance of [the] paper with partial credit would still meet the syllabus criteria."

The record does not reflect that plaintiff complained to Ludwikoski or to Mateja that Hyle was accommodated because he is Caucasian, while plaintiff, who was granted *some* accommodation by Ludwikoski, did not receive *full* accommodation because he is African American.  In his Complaint, however, plaintiff states that the alleged disparity in treatment evinced racial discrimination.  Complaint at 1.  Yet, plaintiff does not allege that he sought and was denied the same accommodation Hyle allegedly received—the privilege of arriving late for an exam.  Rather, he complains that Hyle, a Caucasian, received an unrelated accommodation, while plaintiff, an African American, did not receive the particular accommodation he sought.

For his part, Ludwikoski disputes that Hyle was granted any accommodation.   He explains in his Affidavit that he does not enforce his policy of locking the classroom door and barring latecomers on exam days, as the policy was "intended to encourage prompt attendance and prevent the interruption of lectures," and there are no lectures on exam days, and no class breaks during which students could gain entry.  Defendants' Exhibit 1 ¶ 11.  But, he emphasizes that students "who entered class late during [exams were] not provided additional time to complete the exam or any other accommodation."  *Id.*

At his deposition, plaintiff conceded that, when Hyle entered the room during the exam, the door was open.  Defendants' Exhibit 3 at 62:9-15.  Although plaintiff stated that on other exam days, the door was closed, he did not know whether the door was locked.  *Id.* at 63:2-4; 64:19-65:2.  He also conceded that he did not have any knowledge as to whether Hyle had prearranged his late arrival with Ludwikoski.  *Id.* at 62:16-19.

Plaintiff also pointed to an instance when an African American female classmate, Tina Morris, was denied entry on a *quiz* day*,* but not an *exam* day.  *Id.* at 63:19-20; *see also* Affidavit of Tina Morris, plaintiff's Exhibit 2.  In her Affidavit, *id.* at ¶ 5, Morris recounts that she

> came through the door from the stairwell that le[d] directly to Mr.
> Ludwikoski's . . . class at about the time class was to start.  Mr. Ludwikoski was
> at the classroom door[,] beginning to close the door.  He looked right at [her] but
> closed the door anyway.  [She] missed the quiz for that day and could not come
> into class until the first class break forty-five minutes to one hour or so later.

Morris added that she "was not aware, and do[es] not recall being informed . . . that students could come to class late during exams."  *Id.*

In further support of his allegation that he was not given full credit for his tardy lab submission because he is African American, while his non-African American classmates were

accommodated, plaintiff points to incidents involving three other classmates who are not African American: Sara Pijanowski,[8] Jennifer McBride, and Elizabeth Huh.

In his Complaint, at 1, plaintiff avers that Pijanowski "was allowed to make up weeks of work missed during her consecutive abscences [sic]."   He also asserts that McBride "was allowed to join the class midway thru [sic] the semester."  *Id.*

As to Pijanowski, Ludwikoski asserts in his Affidavit that Pijanowski missed one class on April 23, 2007, and two classes on April 25, 2007, but had told him "in advance that it was necessary for her to miss class to deal with an out of town family emergency involving her grandmother's health."  Defendants' Exhibit 1 ¶ 13.  According to Ludwikoski, Pijanowski took two quizzes and submitted a lab assignment "before she left" to tend to the emergency.  *Id*. Defendants point out in their answer to plaintiff's Interrogatory No. 9 (plaintiff's Exhibit 3), that Pijanowski received a "zero" for a third quiz she missed that week (not completed in advance of her departure).  Moreover, she "did not receive class participation/attendance points" for the classes she missed because she did not submit "documentation of the reason" for her absences, as requested by Ludwikoski.  *Id.*  *See also* e-mail to Pijanowski, dated May 3, 2007 (plaintiff's Exhibit 4).[9]

Although plaintiff insisted in his Complaint that Pijanowski missed "weeks of work," without repercussions, he stated at his deposition:  ". . . I estimate it was [weeks of work],

---

[8] In the Complaint, Motion Memo, Opposition, and Ludwikoski's Affidavit, Pijanowski's first name is spelled "Sara."  The spelling of "Sarah" appears in the Reply and Surreply.

[9] Ludwikoski wrote, in relevant part:

I forgot to ask you earlier, but ordinarily when a student has to miss class for a family emergency, I need some kind of documentation to support it.  This could be a letter from a family member explaining the situation or perhaps a copy of the airline tickets, something like that.  This will also allow me to excuse you from the lab and classes you missed so you won't lose the points.

because I wasn't like really paying attention like I was monitoring it or anything. . . ." Defendants' Exhibit 3 at 120:12-21.  Moreover, he does not challenge the discovery establishing Ludwikoski's record of Pijanowski's actual absences, the circumstances, or the consequences to her.

With respect to McBride, Ludwikoski avers in his Affidavit, *id.* ¶ 16:

> During the spring 2007 semester, I did not have an astronomy student that was permitted to join the class half way through the semester or make up weeks of missed assignments.  One student missed approximately a month of class[,] then attended for the remainder of the semester.  This student, Jennifer McBride, failed the class as a result of missed assignments and quizzes.

Again, plaintiff has not produced any evidence to controvert Ludwikoski's assertions as to McBride.

In  his Opposition, plaintiff also refers to Elizabeth Huh, a student who is not mentioned in his Complaint.  He includes, as part of plaintiff's Exhibit 1, an e-mail Huh sent to Ludwikoski at 10:56 p.m. on February 7, 2007, which stated:

> After my coming back home, when I opened my notebook, I found my test paper which was not handed over to you.  I did not intentionally hold it.  While. . . struggling to note your lecture, I completely forgot.  I am very sorry about that[.] Is there any way to fax it to you?

Ludwikoski responded to Huh by e-mail early the next morning, providing the fax number and stating: "I will accept it this time.  However, in the future the quiz MUST be turned in with everyone else's quiz."  *Id.*

Plaintiff posits: "This situation is analogous to Plaintiff forgetting to turn in his lab except that Ms. Huh's mistake is more egregious."  Opposition at 4.  Insisting that "the situation is not comparable," Reply at 6 ¶ 14, defendants counter, *id.*:

> The time of Huh's email reflects that she attempted to contact Ludwikoski almost immediately after returning home from class on February 7, 2007.  Unlike

Plaintiff, she did not wait three days to contact Ludwikoski.  Ludwikoski agreed
to accept Huh's quiz one time only in these specific circumstances.

*The Exam Grading Disparity*

In support of his claim that he was the victim of disparate treatment based on racial

discrimination, plaintiff avers that "[a]nother white student, James Crouse[,] was given the points

for an incorrect answer" on an exam, while plaintiff "was denied the points for the same answer

when [he] brought it to Mr. Ludwikoski's attention."  Complaint at 1.

On May 3, 2007, plaintiff sent an e-mail to Ludwikoski (defendants' Exhibit 12),

regarding the alleged grading disparity.  He wrote: "I was told by mr. mateja [sic] to ask you

about your decision to give two points to james crouse [sic] for a missed question but not give

me the two points for the same missed question."  *Id.*  Ludwikoski responded by e-mail on May

3, 2007, stating, *id.*:

> Please bring in the paper showing the missed question to the next class, and I will
> compare it to Mr. Crouse's sheet to determine if I graded the two the same way
> and fairly.  If there is a discrepancy, I will correct it.

In his Affidavit, Ludwikoski avers that, following his e-mail to plaintiff, Ludwikoski "did

not hear from [Tann] on th[e] issue again."  Defendants' Exhibit 1 ¶ 17.  At his deposition,

plaintiff stated: "I don't remember if I took [the paper] to [Ludwikoski] or not.  I don't remember

that."  Defendants' Exhibit 3 at 105:16-17.  In any event, Tann has not presented any evidence of

an actual discrepancy in grading.  Nor has Tann presented any evidence disputing that

Ludwikoski offered to review Tann's exam and to correct any discrepancy in grading.

*The Extra Credit Dispute*

Plaintiff claims disparate treatment based on race in regard to the matter of "extra credit."

Students in Ludwikoski's class could earn extra credit "for attending astronomy shows, after two

mandatory shows were attended."  Complaint at 2.  According to plaintiff, "[n]o limit on the

number of shows allowed to be attended was stated in the class syllabus." *Id*.  However, "[a]fter [he] turned in [his] fourth extra credit paper about an attended show, Mr. Ludwikoski announce[d] to the class that only two extra credit papers could be turned in." *Id*.  Morris states in her Affidavit that she "was not aware, and [did] not recall being informed . . . that there was a limit to the number of extra credit [assignments] students could turn in . . . ."  Plaintiff's Exhibit 2 ¶ 6.

In his Affidavit, Ludwikoski maintains that he had orally announced, at the beginning of the semester, "that there was a limit of two extra credit observation logs."  Defendants' Exhibit 1 ¶ 9.  But, he admits that he had "inadvertently omitted this limit, which [he] had applied in previous classes, from the [written] syllabus." *Id*.  Plaintiff conceded at his deposition that, when he handed in four extra credit assignments, Ludwikoski immediately insisted that "he [had] announced [the limit] the first day of class."  Defendants' Exhibit 3 at 77:13-78:1.  But, plaintiff had no recollection of such an announcement. *Id.*

Notably, Ludwikoski's averment in his Affidavit is consistent with the position he took at the time.  On March 30, 2007, Mateja sent an e-mail to Ludwikoski, informing him of plaintiff's request that Mateja override Ludwikoski's refusal to grant full credit for his untimely submitted lab assignment. *See* Defendants' Exhibit 8.  Mateja also mentioned that plaintiff had raised the extra credit issue with him. *Id.*  Ludwikoski responded by e-mail dated April 1, 2007, claiming that he "distinctly remember[ed] stating at the beginning of the semester that [he] would accept a maximum of two" extra credit assignments, and that he "had put it specifically in the syllabus for fall semester, but when [he] changed to spring, it somehow got lost." *Id.*

Of import here, plaintiff concedes that Ludwikoski "eventually accepted" all four of Tann's submissions for extra credit.  Complaint at 2.  Moreover, at his deposition, plaintiff

acknowledged that no other student received credit for more than two extra credit assignments. *See* defendants' Exhibit 3 at 79:12-20.  The following colloquy from plaintiff's deposition is relevant, *id.*:

> Q: You submitted four extra credit assignments?
>
> A: Uh-huh.
>
> Q: And no one else submitted [additional] extra credit assignments or received
>    credit [for those assignments]?
>
> A: [N]obody else did.
>
> Q: So you did submit two more extra credit assignments than anyone else in the
>    class?
>
> A: Yeah, I did.

### The Request To Reschedule An Exam

In his Opposition (but not in his Complaint), plaintiff alleges that he was the victim of racial discrimination because he was not permitted to re-schedule a lab exam so as to take it early, yet Pijanowski was permitted to take quizzes early so that she could visit her sick grandmother, as discussed, *supra*.  *See* Opposition at 8-9.

On March 14, 2007, plaintiff sent an e-mail to Ludwikoski, stating:

> [I]ts [sic] possible I may have to miss next weeks [sic] lab class for an out of town
> employment orientation.  is [sic] it possible that I could take the test scheduled for
> next week, tomorrow, at your office in catonsville [sic]?

*See* defendants' Exhibit 11.  Ludwikoski responded by e-mail the same day, stating: "Please read my policy on exams in the syllabus."  *Id.*

The syllabus for "Astronomy Laboratory," included as defendants' Exhibit 4, stated: "NO MAKEUP EXAMS will be given.  If you miss an exam for some good reason, your other exam

will count proportionally more."   In addition, it provided: "NO MAKEUP QUIZZES will be given.  If you miss a quiz, it will count as your lowest score."

The syllabus for the astronomy lecture course, included as defendants' Exhibit 10, stated: "**You will not be allowed to make up any missed quizzes.**   Therefore, to allow for the unavoidable periodic absences which naturally arise during the semester, and without heavily penalizing your overall course grade, I will **drop <u>your</u> <u>two lowest</u>** quiz grades" (emphasis in original).  In addition, the syllabus for the astronomy lecture course said: "Please do not make any plans that interfere with scheduled exams as there are no late or make-up exams given."  *Id.*

Plaintiff admitted at his deposition that he was able to reschedule the job orientation for a time that did not conflict with his school obligations.  Defendants' Exhibit 3 at 112:1-6.  As the following deposition colloquy illustrates, plaintiff never asked Ludwikoski whether the job orientation would be considered a "good reason" to reschedule an exam, consistent with the syllabus.

> Q: Since this [email, Defendants' Exhibit 11] was the end of the inquiry, I'm assuming that you didn't speak with Mr. Ludwikoski about whether employment orientation would be a good reason or anything like that.
>
> A: No.  I just cancelled [the job orientation].

*Id.* at 112:14-18.

Nevertheless, in his Surreply, at 5 ¶ 8, plaintiff argues: "Plaintiff's situation was just as important to him as Sarah's was to her, and Sarah never offered any proof that there was an actual emergency concerning her grandmother."

Defendants maintain that the circumstances were "not comparable."  Reply at 6 ¶ 12.

They state, *id.*:

> Sarah came to Ludwikoski in advance, she took two quizzes (not exams), and her impending absence was certain.  Tann's request involved rescheduling an exam

(not a quiz) because of the possibility of a conflict, and it was made on less than 24 hours notice.  As it turned out, Plaintiff was simply asking as a matter of personal convenience.  He was able to avoid the conflict and take the exam as scheduled.

Additional facts will be included in the Discussion.

## Discussion

### *Standard of Review*

Under FED. R. CIV. P. Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former FED. R. CIV. P. 56(c)).  The nonmoving party bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*; *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a dispute of material facts.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former FED. R. CIV. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* If "the evidence is such that a reasonable jury could return a verdict" for the nonmoving party, there is a dispute of material fact that precludes summary judgment. *Id.*

In considering a summary judgment motion, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted), *cert. denied*, 540 U.S. 822 (2003).

Here, the key facts are largely undisputed, although the parties' interpretation of those facts is at times quite disparate.[10] Nevertheless, plaintiff devotes much of his Opposition to his contention that defendants' Motion "is filled with mischaracterizations and inaccuracies." Opposition at 2. For example, plaintiff notes that defendants "fail[ed] to mention that Plaintiff personally made a *second* attempt to ask Mr. Ludwikoski to accept the [lab] assignment for full credit and he again refused." *Id.* (emphasis added). Plaintiff quibbles with defendants' assertion that "it is undisputed that Ludwikoski did not lock the classroom door on exam days," Motion Memo at 6, noting that, apart from Ludwikoski's Affidavit, defendants produced "no evidence that undisputedly states that the classroom door was not locked on exam days." Opposition at 3.

---

[10] I endeavored to present the facts in the light most favorable to plaintiff, noting where the parties' accounts differ materially, and using defendants' version to fill in gaps in plaintiff's account.

And, plaintiff asserts that McBride did not *attend* the first class, but rather "appeared at the classroom door, looked in, and then turned and walked away." *Id.* at 6.[11]

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). None of plaintiff's quarrels with defendants' version of the facts raises *material* disputes of fact. Indeed, as indicated, plaintiff has filed his own motion for summary judgment. He also concedes in his Opposition, at 12: "There are no genuine issues of law or fact for the Court to decide."

*Analysis*

"A plaintiff must prove three elements in order to succeed on a § 1983 claim: '(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law.'" *Herman v. Lackey*, 309 F. App'x 778, 782 (4th Cir. 2009) (quoting *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997)). The third element has been met here. Judge Legg, to whom this case was previously assigned, summarily dismissed plaintiff's Complaint on the ground that the "conduct alleged by Plaintiff in his Complaint is not fairly attributable to the state." *Tann v. Ludwikoski*, No. 10-612, 2010 WL 1233375, at *1 (D. Md. Mar. 23, 2010). However, in an unpublished, *per curiam* opinion, the Fourth Circuit reversed, "conclud[ing] that Ludwikoski and Mateja, as employees of a state public educational institution created by state law, are state actors." *Tann v. Ludwikoski*, 393 F. App'x 51, 53 (4th Cir. 2010).

The question then, is, whether defendants deprived plaintiff of a right secured by the Constitution or a federal statute. According to plaintiff, defendants violated the rights guaranteed to him under the Equal Protection Clause of the Fourteenth Amendment.

---

[11] Other criticisms, not enumerated here for the sake of brevity, are not germane to the disposition of the cross-motions for summary judgment.

To prevail, plaintiff must "demonstrate that he has been treated differently from others with whom he is similarly situated *and* that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

The parties dispute whether the evidence supports plaintiff's claim that he was treated differently from similarly situated Caucasians, sufficient for a reasonable jury to find that he was the victim of unlawful discrimination.

Plaintiff contends that "the students in the [astronomy] classes were similarly situated [to him] in all material respects," and asserts that "[t]he strict class code of conduct enumerated in the class syllabi applied to all the students in the class equally." Opposition at 10. Plaintiff maintains, *id.:*

> In every situation involving a non-black student, the Defendants totally disregarded the dictates of the strict code of conduct policy. Comparable situations involving Black students, Plaintiff and Tina Morris, were decided by a heavy-handed, strict compliance with the strict code of conduct. It can only be inferred that the strict code of conduct, though facially neutral, was instituted to discriminate; to only be applied to the behavior of Black students.

Defendants counter that the comparators cited by plaintiff —Hyle, Pijanowski, McBride, and Huh—are not appropriate comparators, because they were not similarly situated to plaintiff. They argue, Motion Memo at 9:

> There is no evidence that any student was allowed: (i) to submit a late lab assignmen[t] for full credit; (ii) to submit more than four extra credit assignments…; or (iii) to reschedule an exam on one day's notice because there was a possibility that he would be out of town [for a job orientation]. Even with the grading issue, it is undisputed that Ludwikoski offered to correct any grading discrepancy, but Plaintiff dropped the matter.

In addition, defendants contend: "Even if the  other students identified in the complaint are considered similarly situated, the facts establish that Plaintiff was not treated less favorably... from those students." *Id.*  They also note that, "even if there was evidence supporting Plaintiff's allegation that other students were relieved from class requirements (which there is not), Plaintiff was also the exclusive beneficiary of certain advantages." *Id.* at 10.  Defendants point out, for example, that plaintiff was permitted to submit an overdue lab assignment for half credit, and he was permitted to exceed the maximum number of extra credit assignments.

Moreover, defendants insist that, even if plaintiff could show that he was treated less favorably than the other students identified in the Complaint, he cannot prove that the disparate treatment was motivated by racial animus.  *Id.* at 10.  Noting that plaintiff "does not contend that he was subject to any overt discriminatory behavior, and he did not contemporaneously complain about race discrimination," *id.* at 5, defendants assert: "The fact that others may have been granted different accommodations does not establish . . . that Plaintiff was intentionally or purposely discriminated against based on race."  Reply at 7 ¶ 15.

At the outset, "[c]ourts will not generally interfere in the operations of colleges and universities." *Herzog v. Loyola College in Maryland, Inc.*, No. 07-02416, 2009 WL 3271246, at *9 (D. Md. Oct. 9, 2009) (citing *Onawola v. Johns Hopkins Univ.,* 412 F. Supp. 2d 529, 532 (D. Md. 2006)).  To be sure, defendants cannot enact or administer classroom policies in a racially discriminatory way.   But, there is no evidence that defendants did so.   To the contrary, defendants' arguments are persuasive and supported by the undisputed facts in the record.

As with almost any teacher, Ludwikoski was called upon to "ma[k]e decisions, on a case-by-case basis, after due consideration of a student's individual circumstances." Motion Memo at 10.  He explained in his Affidavit, Defendants' Exhibit 1 ¶¶ 18-19:

From time to time it is necessary for me to make judgments, on a case by case basis, about the interpretation and application of class rules, grading, and the acceptance of assignments. A student's race has no influence on these decisions. Mr. Tann's race was not a factor in any decision I made regarding his participation in [class], and I did not discriminate against Mr. Tann on the basis of race.

Similarly, Mateja stated in his Affidavit, Defendants' Exhibit 2 ¶¶ 9-11:

Mr. Tann's race was not a factor in any decision I made regarding his participation in [class], and I did not discriminate against Mr. Tann on the basis of race. I have no reason to believe that Dr. Ludwikoski discriminated against Mr. Tann because of his race. At no time in his discussions with me did Mr. Tann indicate that he was being treated differently because of his race.

The professors' comments are arguably self-serving. But, a teacher is not a robot; even slight variations in circumstances may yield different outcomes. Even the same circumstances may sometimes result in seemingly inconsistent outcomes. And, even if a teacher's decision is wholly inflexible, totally unreasonable, or simply wrong, that does not, standing alone, amount to a viable § 1983 claim.

Ludwikoski's decision to limit the number of extra credit assignments to two is not evidence of discriminatory animus, even if he made his decision retroactively, and even if he was mistaken in claiming that he had orally announced the limit at the beginning of the semester. There is simply no evidence that the decision was premised on an intent to discriminate on the basis of race, rather than out of a desire to limit the amount of additional "points" a student could earn through extra credit. And, of particular significance, Ludwikoski ultimately accepted all four of plaintiff's extra credit assignments, thereby allowing him two additional opportunities to earn extra credit, even though plaintiff's classmates, of all races, did not enjoy that same benefit.

Nor is there any evidence that the alleged grading disparity between plaintiff and Crouse was the product of discriminatory animus. First, and perhaps most important, Tann has not

offered evidence of any grading disparity.[12]  Second, plaintiff has not put forward any evidence indicating that Ludwikoski gave Crouse credit for an answer that was, in fact, the same as plaintiff's answer, but for which he did not give credit to plaintiff.   Third, even assuming the existence of a grading disparity, there is no evidence that the disparity was based on race.  As Ludwikoski demonstrated, in response to Tann's complaint he invited plaintiff to meet with him, so that Ludwikoski could review the answers and rectify any potential discrepancy in grading, but plaintiff never followed through with Ludwikoski.  Tann does not dispute these assertions.  Rather, he testified that he could not recall whether he accepted Ludwikoski's offer to compare his response to Crouse's.

As noted, plaintiff also complains because he was not permitted to reschedule an exam in order to attend a job orientation, while Pijanowski was permitted to reschedule two quizzes.  Exams and quizzes are distinct assessments, according to the syllabus.  Moreover, Tann asked for an accommodation on a day's notice, in contrast to Pijanowski.  Although plaintiff argues in his Surreply, at 5 ¶ 8,  that his "situation was just as important to him as Sarah's was to her," Ludwikoski was not required to agree with Tann; he was entitled to conclude that the illness of an older relative justified Pijanowski's request to take two quizzes before she left, and was not comparable to Tann's desire to attend a "possible" job orientation that he was, indeed, able to reschedule.   And, Tann seems to overlook that Pijanowski did not receive full credit for her absences.   Rather, because she failed to submit documentation requested by Ludwikoski verifying her emergency, she did not receive credit for attendance during the time of her absences, and she received a zero on a quiz that was given during her absence.

_____

[12] Tann would hardly be the first student to believe he was the victim of inequity in grading.  For example, the student who receives an 89 on an essay may well wonder why the teacher failed to award one more point in the subjective assessment of the essay, so as to result in a grade in the "A" range.

It is true that the syllabus stated that no "makeups" would be allowed for exams or for quizzes, yet Ludwikoski allowed Pijanowski, but not Tann, to take an assessment in advance. However, with respect to the allegedly discriminatory administration or enforcement of statutes, the Fourth Circuit has stated that "more must be shown than the fact that a benefit was denied to one person while conferred on another." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 819 (4th Cir. 1995) (citation omitted). Plaintiff has not demonstrated that he was denied the opportunity to reschedule an exam due to Ludwikoski's animus towards him as an African American. Further, while a benefit was conferred on Pijanowski as to the rescheduled quizzes, plaintiff overlooks the benefit conferred on him by Ludwikoski as to the extra credit assignments, which was not conferred on anyone else.

In addition, Ludwikoski conferred a benefit on plaintiff with respect to his untimely submission of a lab assignment, for which plaintiff received half credit, notwithstanding the provision in the syllabus that Ludwikoski would not accept late lab assignments. Although plaintiff feels that he was entitled to *full* credit, despite the tardiness, the partial credit was, in fact, an accommodation that was beneficial to plaintiff. Had Ludwikoski applied his classroom policies as a "strict code," plaintiff would not have received any credit.

Plaintiff's comparator evidence does not help his case. McBride, a Caucasion, received no accommodations at all; it is undisputed that she failed Ludwikoski's class. Pijanowski was granted an accommodation in being permitted to submit some work in advance, so that she could attend to an ailing relative. But, as discussed, she was not fully accommodated.

Nor does Hyle qualify as a suitable comparator. Even assuming, *arguendo*, that Ludwikoski did not have a policy of admitting tardy students to class on exam days, there is no evidence that plaintiff sought but was denied late admission on an exam day. He cannot claim

that Hyle was treated preferentially when there is no baseline for comparison.  Plaintiff's African American comparator, Morris, is similarly of no relevance; she also sought no such accommodation.  She merely alleges that she was denied access to class when she arrived late on a *quiz* day.

Huh appears to be the person who most resembles an appropriate comparator.  Plaintiff alleges that Huh received the accommodation he sought: *full* credit for a tardily submitted assignment.  However, Huh's situation was not entirely comparable to plaintiff's.  On the same day as the quiz was due, she sought to hand it in because she had forgotten to do so.  In contrast, several days had passed between the due date of plaintiff's lab assignment and his request to submit it.  And, even if the situations were comparable, and the accommodation Ludwikoski granted to Huh was more favorable than what he granted to plaintiff, Tann has not shown that the alleged disparate treatment was racially motivated.

As indicated, "an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals . . . ."  *Sylvia Dev. Corp.*, 48 F.3d at 825.  But, "a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim."  *Id.*  Plaintiff must "demonstrate[e] that the action was motivated, at least in part, by an 'invidiously discriminatory' intent."  *Id.* at 819.  "[D]iscrimination can be demonstrated through a facially discriminatory act, or by providing extrinsic evidence such that a discriminatory system designed to favor one class over another can be inferred from the circumstances."  *Reaching Hearts Intern., Inc. v. Prince George's County*, 584 F. Supp. 2d 766, 781 (D. Md. 2008).  If "nothing in the record, other than [plaintiff's] conclusory assertion[s], indicates that the defendants acted from an improper motivation . . .

summary judgment [is] proper . . . ."  *Jamil v. Sec'y, Dep't of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990).

## Conclusion

Plaintiff has not submitted any evidence that could convince a reasonable jury that Ludwikoski and Mateja discriminated against him on the basis of race.  As defendants state in their Motion Memo, at 1:

> Plaintiff's claim is based on nothing more than his unreasonable dissatisfaction with routine academic decisions and a wild imagination fueled by incorrect assumption and unsupported speculation about how his classmates were treated. There is no evidence whatsoever of intentional race discrimination.  Defendants are entitled to summary judgment.

For the foregoing reasons, defendants' motion for summary judgment shall be granted.  A separate Order consistent with this Opinion follows.


Date: January 18, 2012                          _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge